UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MACCO PROPERTIES, INC., | ) | Case No. 10-16682-R |
| | ) | Chapter 7 |
| | ) | |
| NV BROOKS APARTMENTS, LLC, | ) | Case No. 10-16503-R |
| | ) | Chapter 7 |
| Debtors. | ) | (Jointly Administered) |

| | | |
|---|---|---|
| MICHAEL E. DEEBA, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 12-1137-R |
| | ) | |
| LEW S. McGINNIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| COBBLESTONE APARTMENTS | ) | |
| OF TULSA, LLC; LARRY D. AND | ) | |
| JEANETTE A. JAMISON FAMILY | ) | |
| TRUST; AND JACKIE L. HILL, JR., | ) | |
| | ) | |
| Intervenors. | ) | |

**RECOMMENDATION THAT DEFENDANT'S MOTION TO WITHDRAW
THE BANKRUPTCY REFERENCE OF THIS CASE AND TO TRANSFER IT
TO THE U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF
OKLAHOMA FOR FURTHER PROCEEDINGS AND A JURY TRIAL BE DENIED**

Before the Court is the Defendant's Motion to Withdraw the Bankruptcy Reference of this Case and to Transfer it to the U.S. District Court for the Western District of Oklahoma for Further Proceedings and a Jury Trial (Adv. Doc. 19) filed by Defendant Lew S. McGinnis ("McGinnis") on July 16, 2013 ("Motion"); Plaintiff's Response thereto (Adv. Doc. 23) filed by Plaintiff Michael E.

Deeba, Trustee ("Trustee") on July 30, 2013; and Defendant's Reply (Adv. Doc. 26) filed on August 12, 2013.[1]

McGinnis contends that cause exists to withdraw the automatic reference of this proceeding to this Court, arguing that (1) this Court does not have statutory or constitutional authority to enter a final order on Trustee's claims; (2) McGinnis is entitled to trial of common law claims before an Article III Court; and (3) McGinnis is entitled to a jury trial and does not consent to the bankruptcy court conducting a jury trial.

The procedural facts relevant to McGinnis's Motion are as follows:

1. On November 2, 2010, Macco Properties, Inc. ("Macco") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. As Macco's president, McGinnis assumed the duties and responsibilities of the debtor-in-possession.

2. On May 31, 2011, the bankruptcy court approved the appointment of Trustee as Chapter 11 Trustee of the Macco bankruptcy estate.

3. On November 1, 2012, Trustee filed a Complaint against McGinnis seeking (1) to collect $571,944.66, an amount Macco allegedly loaned to McGinnis prepetition ("Collection Claim"); (2) to avoid and recover, under 11 U.S.C. § 549(a) and § 550, alleged unauthorized postpetition transfers made by Macco to McGinnis in the amounts of $82,486.00 and $8,500.00 ("Section 549 Claims"); and (3) in the alternative, to avoid and recover under 11 U.S.C. § 548 and § 550, alleged fraudulent transfers in the amount of $662,930.66 ("Fraudulent Transfer Claim").[2]

---

[1] The Motion has been under advisement since August 2013. In September 2013, it appeared that this adversary proceeding (and others) would be voluntarily dismissed based upon projections that the Macco bankruptcy estate would have sufficient funds to pay all allowed claims, eliminating the need to collect money owed to Macco or to recover avoidable transfers. At this point, however, because allowed administrative claims against the estate exceed the estate's cash balance, it has been determined that dismissal of this adversary proceeding is not in the best interests of creditors.

[2] Adv. Doc. 1.

2

4. A summons and the Complaint were personally served on Mr. McGinnis on November 20, 2012.[3]

5. On December 3, 2012, McGinnis answered the Complaint but did not demand a jury trial.[4]

6. On May 6, 2013, Trustee filed a document entitled Jury Trial and Jurisdictional Acknowledgments and Consents (a local form) indicating that no party had timely demanded a jury trial, and that Trustee consented to the entry of final orders and judgments by this Court.[5]

7. Also on May 6, 2013, following a scheduling conference, the Court entered a scheduling order setting the matter for a bench trial on September 16, 2013.[6]

8. On May 10, 2013, more than five months after filing his answer, McGinnis filed a Demand for Jury Trial.[7]

9. Also on May 10, 2013, McGinnis filed his Jury Trial and Jurisdictional Acknowledgments and Consents form in which he declared that –

> 1. ✓ **Lew S. McGinnis** has . . . ~~timely~~ made an election to trial by jury and has . . . not filed a motion to withdraw the reference.
>
> *****
>
> 2. ✓ **Lew S. McGinnis** does [do] not consent to entry of final orders and judgments by this Court on any issue in this adversary proceeding, whether or not designated as "core" under 28 U.S.C. § 157(b), and agree (agrees), not later than **7/15/13** (60 days before trial date), to file with this Court a motion requesting that this Court determine whether this proceeding is a core proceeding or otherwise subject to entry of final orders or judgments by this Court. . . .*

---

[3]Adv. Doc. 7.

[4]Adv. Doc. 8.

[5]Adv. Doc. 12.

[6]Adv. Doc. 13.

[7]Adv. Doc. 16.

**\*No waiver is made and all rights are reserved under <u>Stern v. Marshall</u>, 564 U.S. \_\_, 131 S.Ct. 2594 (2011).**[8]

10. McGinnis asserts a claim against the Macco estate.[9]

11. On July 16, 2013, McGinnis filed his Motion asking the United States District Court to withdraw its automatic reference of this proceeding to the bankruptcy court. While the motion and reply are not models of clarity,[10] in essence, McGinnis appears to argue that he is entitled to adjudication of Trustee's claims by an Article III court because (1) the rights at issue are private rights which cannot be adjudicated by non-Article III courts; (2) he has demanded a jury trial and does not consent to a jury trial before the bankruptcy court; and (3) immediate withdrawal of the reference would promote judicial efficiency and conservation of resources.

12. Trustee admits, with respect to his Collection Claim, that McGinnis has a right to demand fact-finding by a jury, and that this Court lacks authority to enter a final judgment on the claim. Trustee contends, however, that this Court has statutory and constitutional authority to enter final orders adjudicating the Section 549 Claims, and that under Tenth Circuit precedent, McGinnis is not entitled to a jury trial on those claims. Trustee acknowledges a split in authority as to whether his Fraudulent Transfer Claim may be finally adjudicated by a non-Article III court. In light of his admission that at least one claim is outside the bankruptcy court's jurisdiction and would warrant

---

[8]Adv. Doc. 18 (bold font indicates McGinnis's handwritten additions or alterations to the local form).

[9]<u>See</u> Claim No. 51, filed in the main case (Case No. 10-16682). McGinnis purchased Claim No. 51 from Conner & Winters in April 2014. Another claim asserted by McGinnis, Claim No. 63, in the amount of approximately $32 million, was disallowed on March 4, 2013.

[10]For instance, McGinnis interposes that the Complaint does not sufficiently plead facts entitling Trustee to the relief he seeks, which, of course, is not relevant in determining whether the claims must be adjudicated by Article III court.

a jury trial, Trustee suggests that withdrawal of the reference, if ultimately necessary, should be deferred until the proceeding is "trial ready."

13.     The underlying bankruptcy case has been pending since 2010, and this adversary proceeding has been pending since 2012. Although this proceeding was not assigned to the undersigned bankruptcy judge until January 2015, this Court is intimately familiar with the entirety of the bankruptcy case after hearing and determining the contested final fee applications of Trustee and his professionals, and various tort claims asserted against Trustee and his professionals by McGinnis and Price.

**Recommendation No. 1:    That the District Court find and conclude that McGinnis has waived trial by jury.**

McGinnis did not timely request a jury trial.[11] Bankruptcy Rule 9015 incorporates Rule 38 of the Federal Rules of Civil Procedure to provide procedures for asserting a right to jury trial in bankruptcy proceedings. Rule 38 provides, in pertinent part–

> (b)    Demand. On any issue triable of right by a jury, a party may demand a jury trial by:
>
> (1) serving the other parties with a written demand – which may be included in a pleading – no later than 14 days after the last pleading directed to the issue is served; and
>
> (2) filing the demand in accordance with Rule 5(d).
>
> *****
>
> (d)    Waiver; Withdrawal. A party waives a jury trial unless its demand is properly served and filed. A proper demand may be withdrawn only if the parties consent.[12]

---

[11]McGinnis admitted as much in his Jury Trial and Jurisdictional Acknowledgments and Consents form by striking out "timely" in connection his representation that he had demanded a jury trial.

[12]Fed. R. Civ. P. 38(b) and (d).

5

McGinnis did not demand a jury trial in his answer or within fourteen days of filing the answer as required by Rule 38(b). McGinnis's jury demand, filed more than five months after his answer, was not properly served and filed. Accordingly, McGinnis waived his right to a jury by failing to make a proper, timely, demand.[13]

**Recommendation No. 2:** **That the District Court conclude that at least one of Trustee's claims may be a "non-core" claim over which the bankruptcy court lacks authority to enter a final judgment, but further conclude that all claims are "related to" the bankruptcy case and may be referred to this Court for hearing and submission of proposed findings of fact and conclusions of law.**

Under 28 U.S.C. § 1334, the United States District Courts have original and exclusive jurisdiction over cases under title 11 of the United States Code (*i.e.*, bankruptcy cases)[14] and over all property of a bankruptcy estate,[15] and have original but not exclusive jurisdiction over "civil proceedings arising under title 11, or arising in or related to cases under title 11."[16] District courts may refer all the above-described matters and proceedings to bankruptcy courts.[17] The District Court for the Western District of Oklahoma has referred "any and all" such proceedings to the bankruptcy judges via Local Civil Rule 81.4(a).

---

[13] McGinnis's motion to withdraw the reference was likewise untimely. Local Civil Rule 81.4(b)(2) provides that "[m]otions for withdrawal of the reference shall be filed with the bankruptcy clerk within 21 days after service of the summons[.]" McGinnis was served with a summons and the Complaint on November 20, 2012, but did not file his withdrawal motion until July 16, 2013, more than seven months past the deadline.

[14] 28 U.S.C. § 1334(a).

[15] Id. § 1334(e)(1).

[16] Id. § 1334(b).

[17] See id. § 157(a). Bankruptcy courts "constitute a unit of the district court" and bankruptcy judges are "judicial officer[s] of the district court" to whom bankruptcy matters may be referred. Id. § 151.

Bankruptcy courts, upon referral, have the authority to "hear and determine" all "core proceedings arising under title 11, or arising in a case under title 11, . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title."[18] A non-exclusive list of "core" proceedings is set forth in 28 U.S.C. § 157(b)(2). Bankruptcy courts, upon referral, are also authorized to –

> hear a proceeding that is not a core proceeding but that is otherwise *related to* a case under title 11. In such a proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.[19]

A proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[20]

McGinnis's central argument for withdrawal of the reference is based upon the United States Supreme Court's decision in Stern v. Marshall.[21] In Stern, the Supreme Court held that (1) the debtor/trustee's counterclaim against a party that asserted a claim against the estate – a proceeding defined as "core" under 28 U.S.C. § 157(b)(2)(C) – involved only state-created "private rights;" (2) the Constitution confers "judicial Power of the United States" exclusively to Article III judges with lifetime tenure and salary protections;[22] and (3) the power granted to the bankruptcy court by

---

[18] Id. § 157(b)(1).

[19] Id. § 157(c)(1) (emphasis added). See also Fed. R. Bankr. P. 9033, which governs filing and service of proposed findings and conclusions, sets time parameters and procedures for objecting to proposed findings and conclusions, and provides procedures and the standard of review for the District Court's disposition of the proposed findings, conclusions, and objections.

[20] Gardner v. United States (In re Gardner), 913 F.2d 1515, 1518 (10th Cir. 1990) (quotation marks and citation omitted).

[21] 131 S.Ct. 2594 (2011).

[22] U.S. Const., art. III, § 1.

§ 157(b)(1) to finally adjudicate "core" claims that consist solely of state-created "private rights" violated Article III of the Constitution. On the other hand, in Stern, and in numerous cases preceding Stern, the Supreme Court has held that Congress *may* vest non-Article III courts, including bankruptcy courts, with full decision-making authority over claims involving so-called "public rights."[23] The "public rights" doctrine excludes from the scope of Article III's exclusive judicial power the adjudication of certain rights wherein "Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, . . . create[d] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary."[24]

McGinnis contends that none of Trustee's claims involve "public rights." Trustee conceded, in his Response, that the Collection Claim, at least, could not be finally determined by the bankruptcy court under the holding stated in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.[25] In Marathon, the United States Supreme Court declared that final adjudication of a debtor's prepetition state law contract claim against an entity not otherwise joined in the bankruptcy proceedings (*e.g.*, an entity that had not filed a proof of claim) could not be constitutionally assigned to a non-Article III tribunal.[26]

---

[23]Stern, 131 S.Ct. at 2610. See also Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568 (1985) (party's right to compensation was created by federal statute and therefore was a "public right"); Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,458 U.S. 50, 67-87 (1982) (explaining the historical evolution and constitutional basis for the "public rights" doctrine); Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. 272, 284 (1856) (claim for compensation from federal government is a "public right" because the right only arises if the government waives its sovereign immunity; thus, a non-Article III tribunal could adjudicate the claim).

[24]Thomas, 473 U.S. at 593-94.

[25]458 U.S. 50 (1982).

[26]Id. See also Stern v. Marshall, 131 S.Ct. 2594, 2609-10 (2011); Loveridge v. Hall (In re Renewable Energy Dev. Corp.),792 F.3d 1274, 1279 (10th Cir. 2015).

8

Although the Collection Claim was a classic Marathon claim in July 2013, when McGinnis filed his Motion and Trustee filed his Response, the relationship between McGinnis and the estate changed in the intervening years.  In March 2013, McGinnis's $32 million proof of claim was disallowed, so in July 2013, he was not a party asserting a claim against the estate.  Accordingly, Trustee candidly admitted that the pre-petition contract claim could not be finally adjudicated (without consent) by a non-Article III court.[27]  In April 2014, however, McGinnis purchased Claim No. 51 from creditor Conner & Winters. Thus, he currently possesses a claim against the Macco estate, raising the question as to whether McGinnis's current claimant status undermines his pursuit of an adjudication in an Article III court.

In Katchen v. Landy,[28] the United States Supreme Court held that a party filing a proof of claim against the estate and "demanding its allowance must abide the consequences of that procedure,"[29] which, under the facts in Katchen, was the simultaneous resolution of the estate's preference claims against the creditor.[30]  Under such circumstances, the creditor could not insist that the competing claims be resolved in an Article III court."[31]  In this case, however, Claim No. 51, while still in the hands of Conner & Winters, had been allowed, and, in fact, has been partially paid. Because Claim No. 51 is not subject to dispute or further litigation, Trustee's Collection Claim, based solely on state law, is not "resolvable by ruling on the creditor's proof of claim."[32]  Put another

---

[27] See also Commercial Fin. Servs., Inc. v. Bartmann (In re Commercial Fin. Servs., Inc.), 251 B.R. 414, 420-26 (Bankr. N.D. Okla. 2000).

[28] 382 U.S. 323 (1966).

[29] Id. at 333 n.9.

[30] Id. at 334.

[31] Stern, 131 S.Ct. at 2616.

[32] Stern, 131 S.Ct. at 2616.

9

way, because resolution of the Collection Claim will not require the Court to determine whether Claim No. 51 should be allowed or disallowed, its adjudication does not implicate the "restructuring of the debtor-creditor relationship" or "become a part of the claims-allowance process."[33]

With respect to Trustee's Section 549 Claim, actions to recover post-petition transfers of alleged estate property are classified as "core" proceedings under 28 U.S.C. § 157(b)(2)(E). Thus, bankruptcy courts have *statutory* authority to hear and determine such claims.[34]  Bankruptcy courts also possess *constitutional* authority to hear and finally determine Section 549 claims, notwithstanding Stern.  Recovering estate property that was transferred out of a bankruptcy estate without statutory or judicial authority does not implicate state contract or tort law.  The claim does not exist in the absence of a bankruptcy case, and resolution of the claim requires application of bankruptcy law.  The claim "flow[s] from a federal statutory scheme"[35] created by Congress pursuant to its authority under the Constitution to establish uniform bankruptcy laws, and therefore Congress properly and constitutionally assigned it to be heard and determined by a bankruptcy court.  Because the "action at issue stems from the bankruptcy itself,"[36] McGinnis is not entitled to demand adjudication of the Section 549 Claim by an Article III court.

---

[33]"A preferential transfer claim can be heard in bankruptcy when the allegedly favored creditor has filed a claim, because then 'the ensuing preference action by the trustee become[s] integral to the restructuring of the debtor-creditor relationship.' [Langenkamp v. Kulp, 498 U.S. 42, 44 (1990)]. If, in contrast, the creditor has not filed a proof of claim, the trustee's preference action does *not* 'become[] part of the claims-allowance process' subject to resolution by the bankruptcy court. [Id. at 45]."  Stern,131 S.Ct. at 2617 (emphasis original).

[34]See 28 U.S.C. § 157(b)(1).

[35]Stern, 131 S.Ct. at 2614.

[36]Id. at 2618.

Whether the Fraudulent Transfer Claim can be finally decided by a non-Article III court remains an open question. In Granfinanciera, S.A. v. Nordberg,[37] the United States Supreme Court held that a fraudulent transfer action brought by a trustee under Section 548 of the Bankruptcy Code constituted a "suit at common law" – a legal rather than equitable cause of action – for which the right to a trial by jury was preserved under the Seventh Amendment of the United States Constitution.[38] Although Congress had, in 28 U.S.C. § 157(b)(2)(H), designated actions "to determine, avoid, or recover fraudulent conveyances" as "core" proceedings, and empowered bankruptcy judges to hear and finally determine such claims, the Supreme Court held, in Granfinanciera, that the grant of such authority to bankruptcy judges could not strip a defendant of its constitutional right to demand a jury.[39] The Supreme Court acknowledged that bankruptcy courts were statutorily authorized to conduct jury trials, but declined to "express any view as to whether the Seventh Amendment or Article III allows jury trials in such actions to be held before non-Article III bankruptcy judges subject to the oversight provided by the district courts[.]"[40] Further, the Court stated that "[a]lthough the issue admits of some debate, a bankruptcy trustee's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2) seems to us more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions."[41] Thus, in Granfinanciera, the Supreme Court suggested, but did not hold, that such claims could not be decided by non-Article III courts.

---

[37] 492 U.S. 33 (1989).

[38] Id. at 40-49. The Seventh Amendment of the United States Constitution "preserved" the right to a jury trial "in Suits at common law."

[39] Id. at 64.

[40] Id.

[41] Id. at 55.

11

Two decades later, in <u>Stern v. Marshall</u>,[42] the majority of the Supreme Court interpreted <u>Granfinanciera</u> as "reject[ing] a bankruptcy trustee's argument that a fraudulent conveyance action filed on behalf of a bankruptcy estate against a noncreditor in a bankruptcy proceeding fell within the 'public rights' exception" to Article III's delegation of judicial power exclusively to Article III courts.[43]

> We explained that, "[i]f a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court." [<u>Granfinanciera</u>, 492 U.S.] at 54–55, 109 S.Ct. 2782. We reasoned that fraudulent conveyance suits were "quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." <u>Id</u>. at 56, 109 S.Ct. 2782. As a consequence, we concluded that fraudulent conveyance actions were "more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions." <u>Id.</u>, at 55, 109 S.Ct. 2782.[44]

The claim at issue in <u>Stern</u>, however, was not a fraudulent conveyance claim arising under Section 548 of the Bankruptcy Code; it was a counterclaim arising solely under state law. Because the characterization of a *fraudulent conveyance claim* under Section 548 was unnecessary to the resolution of whether the *state-created tort counterclaim* constituted a "public" or "private" right, the Court's characterization in <u>Stern</u> does not carry the weight of binding precedent.

Three years after the <u>Stern</u> decision, in <u>Executive Benefits Ins. Agency v. Arkison</u>,[45] the Supreme Court "assume[d] without deciding, that the fraudulent conveyance claims in this case" could not be finally adjudicated by non-Article III courts.[46] Because the parties to the case stipulated

---

[42] 131 S.Ct. 2594 (2011).

[43] <u>Id</u>. at 2614.

[44] <u>Id</u>.

[45] 134 S.Ct. 2165 (2014).

[46] <u>Id</u>. at 2174.

that the bankruptcy court lacked the power to enter final orders, and because of the unique procedural history of the case, it was again unnecessary for the Court to decide the constitutional issue. In Executive Benefits, the bankruptcy court entered summary judgment in favor of the trustee on his fraudulent transfer claims against the defendant. The defendant appealed the judgment to the District Court, and the District Court affirmed. The appellant complained that the underlying judgment was invalid on the ground that, under Stern, private rights such as fraudulent conveyance claims could not be finally adjudicated by a non-Article III court. The Supreme Court held that *even if* the bankruptcy court lacked authority to enter a final judgment, it did have authority to submit proposed findings of fact and conclusions of law to the District Court for a *de novo* review.[47] When the appellant appealed the summary judgment order to the District Court, the District Court performed a *de novo* review of the bankruptcy court's conclusions of law, agreed with the bankruptcy court in a reasoned opinion, and entered a new judgment in favor of the trustee. The appellant "received the same review from the District Court that it would have received if the Bankruptcy Court had treated the fraudulent conveyance claims as non-core proceedings under § 157(c)(1). In short, even if [appellant] is correct that the Bankruptcy Court's entry of judgment was invalid, the District Court's *de novo* review and entry of its own valid final judgment cured any error."[48]

---

[47]Id. at 2173-74. Pursuant to Bankruptcy Rule 9033, a district judge –

> shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

Fed. R. Bankr. P. 9033(d).

[48]Executive Benefits, 134 S.Ct. at 2175.

While it appears that the "handwriting is on the wall," so to speak, that the Supreme Court may ultimately conclude that fraudulent conveyance claims cannot be adjudicated by non-Article III courts against a party that has not asserted a claim against the estate (at least not without consent of all parties),[49] neither the United States Supreme Court nor the Tenth Circuit has so ruled, and therefore there is no precedent binding on this Court. In Executive Benefits, however, the Supreme Court held that when a proceeding statutorily designated as "core" turns out to be one that was unconstitutionally assigned to the bankruptcy court for determination, as was the case in Stern, the proceeding should be treated as a "non-core" related proceeding, and "[t]he bankruptcy court should hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment."[50]

Accordingly, even if this Court cannot enter a final order on the Fraudulent Transfer Claim or the Collection Claim, this Court may conduct a trial on all the claims, and to the extent necessary, submit proposed findings of fact and conclusions of law to the District Court for a *de novo* review of any finding or conclusion a party timely contests.

**Recommendation No. 3:     The District Court should deny the Motion.**

A district court may permissively withdraw the reference of a proceeding to the bankruptcy court "for cause shown."[51] In determining whether cause exists, courts consider (1) whether the matter is "core" or "non-core;" (2) whether the bankruptcy court has authority to enter a final judgment in the matter; (3) whether a party has a right to jury trial; and (4) whether withdrawing the

---

[49]See 28 U.S.C. § 157(c)(2) (providing statutory authority for bankruptcy judges to enter final orders in non-core proceedings with consent of all parties); Wellness Int'l Network, Ltd. v. Sharif, 135 S.Ct. 1932 (2015) (Congress may constitutionally assign to bankruptcy courts the power to hear and finally determine non-core proceedings if litigants consent to such treatment).

[50]Executive Benefits, 134 S.Ct. at 2173.

[51]28 U.S.C. § 157(d).

14

reference will promote uniformity of bankruptcy administration; foster economical use of resources; and expedite the bankruptcy process.[52] These factors weigh against withdrawing the reference of this adversary proceeding.

As detailed above, Trustee's claims are a mix of "core" and "non-core" claims. The Section 549 Claim is a "core" matter for which this Court has statutory and constitutional authority to enter a final order, subject to appellate review. The Fraudulent Transfer Claim is designated as a "core" matter pursuant to 28 U.S.C. § 157(b)(2)(H), but whether Congress had authority under the Constitution to assign the final adjudication of fraudulent transfer proceedings to the bankruptcy court is unsettled. The Collection Claim is a "non-core" matter. Both the Fraudulent Transfer Claim and the Collection Claim are clearly "related to" the bankruptcy case, however, because successful collection of prepetition debts and recoveries of fraudulent transfers would expand the pool of assets available for distribution to creditors. Under 28 U.S.C. § 157(c)(1), this Court has authority to try the Fraudulent Transfer Claim and Collection Claim as proceedings related to the bankruptcy case, and submit proposed findings of fact and conclusions of law to the District Court, which would afford McGinnis all the protections and benefits of adjudication by an Article III court to which he might be entitled.

Withdrawal of the reference is not necessary to afford McGinnis access to a jury, as McGinnis waived any right to jury trial by failing to make a timely demand. In addition, even if McGinnis had not waived or forfeited any right to a jury trial, he would not be entitled to a jury on Trustee's Section 549 Claim.[53]

---

[52]See, e.g., Shubert v. Winterhalter, 531 B.R. 546, 550-51 (E.D. Pa. 2015).

[53]Determining whether a litigant is entitled to a jury trial requires a court to "look to whether the action would have been one at law or equity in the Eighteenth Century courts of England, whether the nature of the relief is primarily legal or equitable, or whether the action is one that is not equitable in nature but which Congress has assigned to a non-Article III adjudicative body."

Withdrawal of the reference will not promote uniformity in bankruptcy administration, foster economical use of resources, or expedite the bankruptcy process. This Court is intimately familiar with the underlying bankruptcy case, the bankruptcy estate, and the interpretation and application of 11 U.S.C. §§ 548, 549 and 550 and relevant Oklahoma law. Pending before this Court are five related adversary proceedings.[54] Maintaining these proceedings in one court will promote uniformity in bankruptcy administration. Because all defendants in the related proceedings are represented by the same counsel, pretrial scheduling can be coordinated to conserve resources.

Moreover, these proceedings have been deferred for a considerable period of time. At this point, with the bankruptcy case in its sixth year, coordinated and expeditious adjudication of these proceedings will allow Trustee to efficiently and economically complete his administration of the estate. For all the reasons stated herein, the Court recommends that the Motion be **denied.**

**The Clerk of the Bankruptcy Court is directed to transmit to the Clerk of the United States District Court for the Western District of Oklahoma a copy of this Recommendation, together with a docket sheet and copies of the all pleadings referred to in this Recommendation, and file a certificate of such transmission in this proceeding.**

Respectfully submitted this 25th day of February, 2016.

*/s/ Dana L. Rasure*
DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

Jobin v. Youth Benefits Unlimited, Inc. (In re M & L Bus. Mach. Co.), 59 F.3d 1078, 1082 (10th Cir. 1995), *citing* Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989). The Tenth Circuit Court of Appeals has held that "enforcement of Section 549, a provision clearly designed to protect the bankruptcy estate following its inception, is a procedure which is equitable in nature." Jobin, 59 F.3d at 1082. The remedies inherent in §§ 549 and 550 – avoidance and recovery of property of the bankruptcy estate – did not exist at common law and were created by Congress as part of a statutory scheme that bankruptcy courts have been given the power to enforce. Id.

[54] Deeba v. Pinkerton & Finn, P.C., Adv. No. 12-1118-R (motion to withdraw reference denied by Hon. Timothy D. DeGiusti on December 11, 2015); Deeba v. Price, Adv. No. 13-1022-R; Deeba v. McGinnis, Adv. No. 13-1029-R; Deeba v. Superior Farm, LLC, Adv. No. 12-1138-R (motion to withdraw reference pending before Hon. Stephen P. Friot); Deeba v. The Corporate Group, Adv. No. 12-1139-R (motion to withdraw reference and for jury trial denied by Judge DeGiusti on January 29, 2016).